BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE FAIRLIFE MILK PRODUCTS MARKETING AND SALES PRACTICES LITIGATION** | MDL No.: _____ |

BRIEF IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS
PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR
<u>CONSOLIDATED PRERIAL PROCEEDINGS</u>

Adam J. Levitt
Amy E. Keller
Adam Prom
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
aprom@dicellolevitt.com

Kenneth S. Canfield
Georgia Bar No. 107744
**DOFFERMYRE SHIELDS CANFIELD
& KNOWLES, LLC**
1355 Peachtree Street, NE, Suite 1725
Atlanta, Georgia  30309
Telephone:  404-881-8900
kcanfield@dsckd.com

Daniel L. Warshaw
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California  91403
Telephone:  818-788-8300
dwarshaw@pswlaw.com

Melissa S. Weiner
Joseph C. Bourne
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota  55402
Telephone:  612-389-0600
mweiner@pswlaw.com
jbourne@pswlaw.com

Michael R. Reese
Sue J. Nam
Carlos F. Ramirez
**REESE LLP**
100 West 93rd Street
New York, New York  10025
Telephone:  212-643-0500
mreese@reesellp.com
snam@reesellp.com
cramirez@reesellp.com

*Counsel for Plaintiff Eliana Salzhauer*

Pursuant to 28 U.S.C. § 1407 and Rules 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Eliana Salzhauer ("Movant"), Plaintiff in the action styled *Salzhauer v. The Coca-Cola Company, and Fairlife, LLC*, No. 19-cv-02709-MHC (N.D. Ga.) (the "*Salzhauer* Action"), respectfully submits this brief in support of her motion to transfer this Action and all related pending and subsequently-filed "tag along" actions (defined below) to the United States District Court for the Northern District of Georgia, or alternatively to the United States District Court for the Northern District of Illinois, for coordinated or consolidated pretrial proceedings.

Movant seeks transfer and assignment of all pending Actions[1] related to milk products manufactured, marketed, and sold by Fairlife, LLC, The Coca-Cola Company ("Coca-Cola"), and/or Mike and Sue McCloskey (collectively, "Defendants") with false representations that the animals involved in producing the milk products are treated humanely.  As of the date of this motion, there are not less than four substantially-similar Actions, filed on behalf of plaintiffs and proposed nationwide and statewide classes in three different federal district courts alleging similar wrongful conduct by Defendants.  Movant is the Plaintiff in the only pending case that has named Coca-Cola as a Defendant, and she seeks transfer and assignment to the Northern District of Georgia, the location of Coca-Cola's headquarters and principal place of business, or, alternatively, to the Northern District of Illinois, the location of Fairlife, LLC's headquarters and principal place of business.

All Actions involve common questions of law and fact that arise from Defendants' manufacture, marketing, distribution, and/or sales of milk products that were marketed and sold

---

[1] This includes the cases listed in the Schedule of Actions, as well as any subsequently-filed actions involving similar facts or claims.

with false representations that the animals involved in producing the milk products are treated humanely. All Actions have been filed following the discovery that Defendants' dairy cows are the victims of animal abuse so significant that it has led to criminal charges being brought against three individuals from Fair Oaks Farms, the flagship farm for Defendants' milk products. The Actions all overlap, concern the same revelation of animal abuse, and will involve the same discovery and motion practice. Transfer of these actions before one forum for coordinated or consolidated pretrial proceedings would be in the best interests of judicial economy and lessen the risk of inconsistent judgments. Although the Actions span courts across the United States, one jurisdiction, in particular, makes the best sense for transfer and consolidation: the Northern District of Georgia, which is where Coca-Cola—which markets and distributes the milk products and is a joint owner of Fairlife, LLC—is headquartered.

I.   BACKGROUND

*Eliana Salzhauer v. The Coca-Cola Company, and Fairlife, LLC*, No. 19-cv-02709, was filed on June 13, 2019 in the United States District Court for the Northern District of Georgia, seeking certification of nationwide class of all persons who purchased the milk products, along with purchasers in a Florida subclass. The *Salzhauer* Action names Defendant Fairlife, LLC and also Defendant Coca-Cola, the latter of which jointly owns Fairlife, LLC and markets and distributes Defendants' milk products throughout the United States. Plaintiff's counsel in the Salzhauer Action had been investigating Fairlife for no less than six months prior to the filing.

The *Salzhauer* Action asserts claims for fraud, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, violations of the Florida Deceptive and Unfair Trade Practices Act, and unjust enrichment. That case has been assigned to Judge Mark H. Cohen. Plaintiff Salzhauer is the Movant here, and she is represented by attorneys from DiCello Levitt

Gutzler LLP, Pearson, Simon & Warshaw LLP, Doffermyre Shields Canfield & Knowles, LLC, and Reese LLP.

Two actions have been filed in the Northern District of Illinois: *Alain Michael v. Fairlife, LLC, Mike McCloskey, and Sue McCloskey*, No. 19-cv-03924 (the "*Michael* Action") and *Andrew Schwartz and Alice Vitiello v. Fairlife, LLC*, No. 19-cv-03929 (the "*Schwartz* Action"). Both of these actions also seek certification of a nationwide class of all persons who purchased the milk products at issue, along with subclasses. The *Michael* Action names Defendants Mike and Sue McCloskey as the co-founders of Defendant Fairlife, LLC, and it defines "Milk Products" as every variety and size of milk products sold nationwide with the exception of the Fairlife Yup!, Core Power, and Smart Snacks brands. The *Michael* Action asserts claims for fraud, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, violations of other state consumer fraud acts,[2] violations of California's Consumers Legal Remedies Act, California's Unfair Competition Law, California's False Advertising Law, and unjust enrichment. That case has been assigned to Judge Robert M. Dow, Jr. Plaintiff Michael is not represented by Movant's counsel here. The *Schwartz* Action asserts claims for unjust enrichment, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, and violations of the Ohio Consumer Sales Practices Act. That case has been assigned to Judge John Robert Blakey. Plaintiffs Schwartz and Vitiello are not represented by Movant's counsel here.

The fourth Action, *Mohammad Sabeehullah and Nabil Khan v. Fairlife, LLC, and Mike McCloskey, and Sue McCloskey*, No. 19-cv-00222, was filed on June 17, 2019 in the United States District Court for the Northern District of Indiana, seeking certification of an Indiana class of

---

[2] Those consumer fraud claims are asserted under the laws of California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.

residents who purchased the milk products and a California class of residents who purchased the milk products. That case asserts claims for violations of the Indiana Deceptive Consumer Sales Act, California's Unfair Competition Law, and California's False Advertising Law. That case has been assigned to Judge Theresa L. Springmann. Plaintiffs Sabeehullah and Khan are not represented by Movant's counsel here.

The complaints in these Actions are substantively identical in several ways. <u>First</u>, they each concern the same milk products, namely each variety (*e.g.*, whole, 2% reduced fat, 1% low fat, fat free, and chocolate) and size (*e.g.*, 1.5 liters and 11.5 ounces) that are marketed as premium products with representations that the cows that are part of producing the products are treated humanely. <u>Second</u>, each of the complaints alleges that Defendants have engaged in fraudulent and deceptive conduct regarding their marketing of the milk products, including misrepresenting on the products' labels and elsewhere that Defendants' dairy cows are humanely treated. Each of the complaints specifies that an undercover investigation by Animal Recovery Mission revealed, in early June 2019, pervasive practices of animal abuse at Fair Oaks Farms, Defendant's flagship farm. <u>Third</u>, the Actions filed to date seek certification of nearly identical nationwide and/or state classes of purchasers of the milk products. <u>Fourth</u>, the lawsuits allege substantively identical claims regarding Defendants' fraud and deception, including fraud, violations of consumer protection statutes, and unjust enrichment.

While the claims asserted differ slightly (but immaterially) from complaint to complaint, each Action names one common defendant (Fairlife, LLC), alleges materially identical facts, and seeks certification of nationwide and/or statewide classes comprised of purchasers of the milk products. Movant respectfully seeks transfer of the Actions to the United States District Court for the Northern District of Georgia, or, alternatively, to the Northern District of Illinois, for

coordinated or consolidated pretrial proceedings. Each of the Actions filed against Defendants contains common questions of fact. Moreover, because Defendants' actions have received a great deal of publicity and because Defendants are publicly addressing and acknowledging the discovery of animal abuse, a number of tag-along cases will almost certainly be filed in the near future.

## II.   LEGAL STANDARD

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, Section 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

*Id.*; *see also In re Nifedipine*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).

## III.   ARGUMENT

The Actions, and the several tag-along actions that will presumably follow, are appropriate for Section 1407 transfer because they involve common issues and transfer will benefit the parties, the witnesses, and the courts. Further, transfer to the Northern District of Georgia is the most appropriate given Coca-Cola's location in that district, the fact that Coca-Cola maintains control over Fairlife, LLC as a joint owner and regulates animal welfare at its dairy suppliers, and the fact that many witnesses will be located in that jurisdiction. Alternatively, transfer to the Northern District of Illinois is also appropriate, given Fairlife, LLC's location there.

### A. Transfer Is Appropriate Under 28 U.S.C. § 1407.

"The purpose of § 1407. . . is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Centralization is meant to "eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017).

Overlapping class action lawsuits, like those at issue here, involve the type of common questions that are particularly well suited for transfer and coordination under 28 U.S.C. § 1407. *See generally In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381, 1381 (J.P.M.L. 2003). The filed Actions assert the same common nucleus of operative facts: misrepresentations that that the cows that are part of producing the milk products are treated humanely. Yet, this common nucleus is not all that is common between the Actions. Transfer is further appropriate here because many other common questions exist, including:

- whether Defendants' statements about the milk products were or are true, misleading, or likely to deceive a reasonable consumer;
- whether Defendants' representations about the milk products were material to a reasonable consumer;
- whether consumers overpaid for milk products at the point of sale; and
- whether consumers have been damaged and, if so, the measure of such damages.

Adjudicating these and other common issues in a single transferee venue will benefit the parties and witnesses and promote judicial efficiency by allowing a single court to coordinate the pretrial proceedings governing claims with these issues. The "potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions" into an

MDL. *In re Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970).[3]  Transfer and coordination under Section 1407 is, thus, appropriate. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361 (J.P.M.L. 2014).

Centralization of these Actions in a single judicial district for coordinated pretrial proceedings will promote the just and efficient conduct of these Actions, will serve the convenience of all parties and witnesses, and will promote the interest of justice as all Actions involve common factual and legal issues.  With four Actions in three different Districts—and with those numbers almost certainly about to materially increase—the size of this litigation weighs in favor of transfer.[4]  Transfer to a single forum is appropriate because it will prevent duplication of class- and merits-related discovery and will also eliminate the possibility of overlapping or inconsistent pretrial determinations by courts of coordinate jurisdiction. *See, e.g.*, *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 26 F. Supp. 3d 1394 (J.P.M.L. 2014) ("Centralization will . . . prevent inconsistent pretrial rulings (particularly as to class certification) . . . ."); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determination exists.").

---

[3] *See also In re Toys "R" Us-Del., Inc., Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 581 F. Supp. 2d 1377 (J.P.M.L. 2008) (consolidating just two putative class actions that were "brought on behalf of nearly identical putative nationwide classes").

[4] The Panel has previously transferred cases to form MDLs based upon a similar number of pending actions. *See, e.g., In re Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, 645 F. Supp. 2d 1358, 1360 (J.P.M.L. 2009) (ordering transfer where three actions were pending in three districts); *In re Optical Disk Drive Prod. Antitrust Litig.*, 701 F. Supp. 2d 1382 (J.P.M.L. 2010) (ordering transfer of five cases pending in two total districts); *In re Wireless Telephone Replacement Protection Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting transfer of three consumer protection cases); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer of two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation).  Regardless, by the time the Panel hears this motion, the number of constituent cases in this proposed MDL will almost certainly exceed the present four Actions.

The anticipated discovery and documents to be produced in each of the class actions further warrants transfer and consolidation. *See In re Auto Body Shop*, 2014 WL 3908000, at *1-2 (J.P.M.L. 2014) (noting that transfer was appropriate to eliminate duplicative discovery when the actions shared a common factual core). Coordinating discovery and pretrial proceedings will streamline the Actions' course, promoting the most efficient use of resources for the parties and the Court. Centralizing these actions in a single transferee court will ease the burden on the individual parties, their attorneys, and presiding judges by distributing the workload into a more manageable, structured proceeding. The possibility of inconsistent rulings on pretrial issues, including rulings on discovery and privilege objections, weighs in favor of transfer. *See, e.g., In re Auto Body Shop*, 2014 WL 3908000, at *1 (transfer to a single judge was beneficial because he or she could "structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands"); *In re Enfamil Lipil*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("Centralizing the actions will allow for the efficient resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and witnesses.").

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Securities Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). Pretrial procedures will necessarily involve motions to dismiss, discovery motions, and class certification motions. Conflicting rulings on these motions will cause unnecessary confusion and duplicative effort. Because the Actions all arise out of the same core nucleus of operative facts, and with the likelihood that future filed actions will be filed, the risk of inconsistent rulings on

pretrial motions is substantially increased. It is in the best interests of all parties, witnesses and the Court, to transfer and coordinate these Actions. All of the goals of § 1407 will be furthered by transfer and coordination of the Actions.

### B. The Northern District of Georgia Is the Most Appropriate Transferee Forum.

The Panel balances a number of factors in determining the transferee forum, including: the experience, skill, and caseloads of the available judges; the number of cases pending in the jurisdiction; the convenience of the parties; the location of the witnesses and evidence; and the minimization of cost and inconvenience to the parties. *See In re Preferential Drugs Prods. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977); *In re Tri-State Crematory Litig.*, 206 F. Supp. 1376, 1378 (J.P.M.L. 2002).

The Northern District of Georgia is best-suited to advance the convenience of the parties with respect to these Actions. **First,** the Northern District of Georgia has the judicial resources available to effectively see this case through to completion, as it only has five multidistrict cases currently pending there, four of which are before the Honorable Thomas W. Thrash, Jr.[5] By contrast, the Northern District of Illinois currently has ten multidistrict cases, two of which are pending before Judge Robert M. Dow, Jr., who also has been assigned to the *Michael* Action discussed above. Moreover, as of March 31, 2019, the median time from filing of civil cases to disposition in the Northern District of Georgia is 6.9 months, compared to 7.9 months in the Northern District of Illinois.[6] Judge Mark H. Cohen, who is presiding over the *Salzhauer* Action

---

[5] *See* Judicial Panel on Multidistrict Litigation Statistics Report – Distribution of Pending MDL Dockets by District (June 19, 2019), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-June-19-2019.pdf.

[6] The National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2019.pdf

9

in the Northern District of Georgia, is an experienced jurist who has presided over numerous consumer class action cases, has seen them to resolution, and is not currently handling a multidistrict case. Movant is confident that Judge Cohen is more than capable of handling this multidistrict litigation.

*Second,* the Northern District of Georgia, Atlanta Division, is a convenient forum for Defendants and potential witnesses. When assessing the appropriateness of potential transferee districts, the Panel often puts an emphasis on the central location of documents and witnesses, as that location typically provides the most convenient forum for the litigation. Absent transfer to the Northern District of Georgia, Defendants will be required to litigate the same issues in multiple jurisdictions simultaneously, resulting in a significant increase in expense and inconvenience. Coca-Cola's corporate headquarters is in Atlanta, Georgia, less than two miles from the courthouse, and it regularly conducts business in Georgia. As a result, many of the witnesses and relevant documents will be present in Georgia, particularly because Coca-Cola maintains control over Fairlife, LLC as a joint owner and regulates animal welfare at its dairy suppliers and because Coca-Cola directly markets and distributes Defendants' milk products from its headquarters in Atlanta. This factor weighs heavily in favor of centralizing the litigation in the Northern District of Georgia. *See, e.g.*, *In re Equifax, Inc.*, 289 F. Supp. 3d 1322 (J.P.M.L. 2017) (transferring actions to the Northern District of Georgia, where the main defendant is headquartered as "relevant documents and witnesses thus likely will be found there."); *In re Vytorin/Zetia Mktg.*, 543 F Supp. 2d 1378 (J.P.M.L 2008) (centralizing cases in District of New Jersey because two of the defendants had their corporate headquarters in New Jersey, and thus, relevant discovery could be found there, and transfer to that district enjoyed support of defendants and several plaintiffs); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 559 F Supp.

2d 1405 (J.P.M.L 2008) (finding District of Maine was appropriate transferee district because, among other reasons, defendant had its headquarters in that district, and thus relevant documents and witnesses would be found there); *In re Wash. Mut., Inc.*, 536 F Supp. 2d 1377 (J.P.M.L 2008) (centralizing litigation in Western District of Washington where defendant was headquartered in that District and witnesses and documents were located there).

*Third*, the Northern District of Georgia, Atlanta Division, provides a location allowing for easy access for all litigants and witnesses.  It is located in a major metropolitan area with hotels and public metro transportation to accommodate visiting attorneys.  It has a major international airport, Hartsfield-Jackson Atlanta International Airport, with direct, frequent and economical flights available from almost all major cities in the United States.  The Panel routinely assesses the ease of access to the transferee forum in selecting the transferee forum.  *See, e.g., In re Polyester Staple Antitrust Litig.*, 259 F. Supp. 2d. 1376 (J.P.M.L. 2003); *See also* Gregory Hansel, Extreme Litigation: *An Interview with Judge Wm. Terrell Hodges, Chairman of the Judicial Panel on Multidistrict Litigation*, 19 Me. B.J. 16, 19 (2004) ("[W]e take into account…the accessibility of the court, particularly air travel in selecting a transferee district.").

Accordingly, the Northern District of Georgia, where Coca-Cola is located, is best-suited to oversee this multidistrict case.  Alternatively, Movant seeks transfer and assignment to the Northern District of Illinois, which is the district where Fairlife, LLC is headquartered and where two of the Actions are currently pending.

## IV.   CONCLUSION

For all of the foregoing reasons, movant, Plaintiff Salzhauer, respectfully requests this Panel transfer the scheduled actions and any additional tag-along actions to the Northern District of Georgia, or alternatively to the Northern District of Illinois, for coordinated or consolidated pretrial proceedings.

Dated:  June 21, 2019

        Respectfully submitted

*/s/ Adam J. Levitt*
    Adam J. Levitt
    Amy E. Keller
    Adam Prom
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
aprom@dicellolevitt.com

Kenneth S. Canfield
Georgia Bar No. 107744
**DOFFERMYRE SHIELDS CANFIELD & KNOWLES, LLC**
1355 Peachtree St., NE, Suite 1725
Atlanta, Georgia  30309
Telephone:  404-881-8900
kcanfield@dsckd.com

Melissa S. Weiner
Joseph C. Bourne
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota  55402
Telephone:  612-389-0600
mweiner@pswlaw.com
jbourne@pswlaw.com

Daniel L. Warshaw
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California  91403
Telephone:  818-788-8300
dwarshaw@pswlaw.com

Michael R. Reese
Sue J. Nam
Carlos F. Ramirez
**REESE LLP**
100 West 93rd Street
New York, New York  10025

Telephone: 212-643-0500
mreese@reesellp.com
snam@reesellp.com
cramirez@reesellp.com

***Counsel for Plaintiff in the Salzhauer Action***